UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
AMERICAN EMPIRE SURPLUS LINES
INSURANCE COMPANY,

                       Plaintiff,

         v.

**MEMORANDUM AND ORDER**
23-CV-0755-SJB-ST

CYNCAL STEEL FABRICATORS INC., et al.,

                      Defendants.
----------------------------------------------------------------X

**BULSARA, United States District Judge:**

      This breach of contract action brought by American Empire Surplus Lines Insurance Company ("American Empire") seeks payment of unpaid insurance premiums under two policies issued to Cyncal Steel Fabricators Inc. ("Cyncal"). American Empire's premiums are computed as a percentage of the insured's "gross receipts," which it contends includes all receipts received by Cyncal during the respective policy periods. Following audits of Cyncal's gross receipts for the 2021 and 2022 policy periods, American Empire informed Cyncal that it owed additional premiums of approximately $ 336,000, which Cyncal refused to pay, asserting that "gross receipts" should be calculated differently. In its view, gross receipts should only be based on work performed during the policy period, excluding certain payments for work performed prior to the policy period. American Empire filed this lawsuit, and has moved for partial summary judgment on its breach of contract claim. (Pl.'s Notice of Mot. for Partial Summ. J. dated Feb. 28, 2025, Dkt. No. 111). For the reasons stated

below, the Court concludes that there is no material factual dispute as to whether Cyncal owes the unpaid additional premiums, and the motion is granted.

## STANDARD FOR SUMMARY JUDGMENT

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant, American Empire, bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways. Fed. R. Civ. P. 56(c)(1). It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." *Id.* R. 56(c)(1)(A). Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

To defeat a properly supported motion for summary judgment, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)). "When a motion for summary judgment is supported by documentary and testimonial evidence, the nonmoving party may not rest upon mere allegations or denials—rather, he must present sufficient probative evidence to establish a genuine issue of material fact." *Horror Inc. v. Miller,* 15 F.4th 232, 240 (2d Cir. 2021). In essence, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586.

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or, if controverting any fact, responding to each assertion. *See* Loc. Civ. R. 56.1(a)–(b). In both instances, the party must support its position by citing to admissible evidence from the record. *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation).

3

In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994). Furthermore, "[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded." *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013 WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1. The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)). The Court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence. *E.g., Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence).

The Court must also disregard conclusory denials that lack citations to admissible evidence. *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument. They should contain factual assertions, with citation to the record. They should not contain conclusions[.]*"), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003). Also, where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement

4

by the moving party "will be deemed to be admitted." Loc. Civ. R. 56.1(c). The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits. *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir. 2009).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court finds the following facts—drawn from the pleadings, the parties' respective Rule 56.1 statements, and supporting affidavits and exhibits attached thereto—are undisputed unless otherwise noted.

American Empire issued two Commercial General Liability insurance policies to Cyncal for the periods March 30, 2021 to March 30, 2022 (the "2021 Policy") and March 30, 2022 to March 30, 2023 (the "2022 Policy"). (Pl.'s Stmt. Pursuant to Local Rule 56.1 dated Apr. 9, 2025 ("Pl.'s 56.1 Stmt."), Dkt. No. 111-11 ¶¶ 1–2; Def.'s Counter Stmt.

5

Pursuant to Local Rule 56.1 ("Def.'s 56.1 Stmt.") dated Apr. 9, 2025, Dkt. No. 111-14 ¶¶ 1–2).[1]

It is not disputed that the premiums charged for the American Empire policies were to be computed as a percentage of Cyncal's "gross receipts" during the policy periods. (Pl.'s 56.1 Stmt. ¶ 3; Def.'s 56.1 Stmt. ¶ 3). The premium schedules for the policies illustrate the point:

```
                                              Previous Policy: NEW
                                              Policy No.    PLE694611

        COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS PAGE
Named Insured  Cyncal Steel Fabricators, Inc.   Policy Period
               Pine Aire Realty Corp.           From 03/30/2021 To 03/30/2022
                                                12:01 A.M. Standard Time at your mailing address
                                                shown above
Mailing Address  225 Pine Aire Drive
                 Bay Shore, NY 11706-1147

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
LIMITS OF INSURANCE
POLICY GENERAL AGGREGATE LIMIT                           $   5,000,000
GENERAL AGGREGATE LIMIT PER PROJECT                      $   4,000,000
EACH OCCURRENCE LIMIT                                    $   2,000,000
PRODUCTS - COMPLETED OPERATIONS AGGREGATE LIMIT          $   4,000,000
PERSONAL AND ADVERTISING INJURY LIMIT                    $   2,000,000
DAMAGE TO PREMISES RENTED TO YOU LIMIT                   $      50,000
MEDICAL EXPENSE LIMIT                                    $    Excluded    ANY ONE PERSON
Deductible $ 5,000 Each Occurrence (Loss & Expense)
```

---

[1] The policies do not contain choice of law provisions, nor do the parties address what law governs. "A federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006). But both parties assumed the policies are governed by New York law. (*See* Pl.'s Mem. of Law in Supp. of Mot. for Partial Summ. J. dated Feb. 28, 2025 ("Pl.'s Mem."), Dkt. No. 111-13 at 12; Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Partial Summ. J. dated Mar. 26, 2025 ("Def.'s Mem."), Dkt. No. 111-17 at 5). And this election resolves the choice of law issue—the Court applies New York law to interpret the two policies. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 223 (2d Cir. 2014) ("[P]arties by their acquiescence . . . may induce the trial court to assume that foreign law is similar to that of the forum . . . with the result that a court does not err when it articulates its decision by reference to the law of the forum." (quotation omitted)); *e.g., Blodgett v. Siemens Indus., Inc.*, No. 13-CV-3194, 2018 WL 385477, at *5 (E.D.N.Y. Jan. 11, 2018) ("Plaintiffs' . . . citation solely to New York law in support of their . . . claims in their prior submissions is deemed by this Court to constitute an implied consent to use New York law, which settles the choice of law issue in favor of the application of New York law.").

| Classification | Code No. | Premium Basis* | Rates Pr/Co | Rates All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| | | (a) $2,200,000 | Included | $146.063 Per $1,000 | Included | $321,338 |

**DESCRIPTION OF BUSINESS:**
Form of Business: Corporation
Business Description:
Steel Fabrication and Installation Contractor
Location of All Premises You Own, Rent or Occupy:

**PREMIUM:**

\* (a) Gross Receipts; (b) Construction Cost; (c) Payroll; (d) Gross Sales; (e) Other

| | | |
|---|---|---|
| Minimum Policy Premium: | $ | 321,338 |
| Advance Premium: | $ | 321,338 |
| Minimum Earned Premium: | $ | 80,334 |
| Total: | $ | 321,338 |

**FORMS AND ENDORSEMENTS** applicable to all Coverage Parts and made part of this policy at time of issue are listed on the attached Forms and Endorsements Schedule IL8801 (11/85).

**AUDIT PERIOD:** ANNUAL (Unless Otherwise Stated)

(American Empire 2021 Policy, attached as Ex. 1 to Suppl. Aff. of Randy Myers in Supp. of Pl.'s Mot. for Summ. J. dated Jan. 2, 2025 ("Myers Aff."), Dkt. No. 111-3 at 11).[2] As the excerpt illustrates, the "premium basis" is based on "Gross Receipts."

American Empire provided a methodology of how it calculated the premiums owed, (Pl.'s 56.1 Stmt. ¶ 4), which Cyncal disputed and "denie[d]," without citing any record evidence. (Def.'s 56.1 Stmt. ¶ 4). That means that the Court adopts the methodology as an undisputed fact. *See supra* pp. 4–5. The calculation proceeds in parts. American Empire charges an initial "Advance Premium" based upon Cyncal's estimate of its gross receipts for the policy period. (Pl.'s 56.1 Stmt. ¶ 4). But this Advance Premium is only a deposit and is subject to adjustment if subsequent audits reveal that Cyncal's actual gross receipts exceed the initial estimate. (*Id.*). These audits are performed pursuant to the Common Conditions provisions of the policies. (*Id.* ¶ 10;

---

[2] For the 2021 and 2022 Policies, the page numbers cited refer to the page numbers assigned by the Electronic Case Filing System.

Def.'s 56.1 Stmt. ¶ 5; American Empire 2021 Policy at 33; American Empire 2022 Policy, attached as Ex. 2 to Myers Aff., Dkt. No. 111-4 at 33).

This methodology flows from the policies themselves, which provide in relevant part:

> b.   Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

(Pl.'s 56.1 Stmt. ¶ 7; Def.'s 56.1 Stmt. ¶ 5; American Empire 2021 Policy at 26; American Empire 2022 Policy at 26). In other words, these provisions provide that after the Advance Premium is paid and an audit is conducted, American Empire will compute an additional amount to reflect the actual premium due, and either charge Cyncal or issue a refund in the case of overpayment. But ultimately, the Advance Premium and the subsequent audit adjustments are calculated based on "gross receipts."

The definition of "gross receipts" is the central dispute in the case. American Empire contends that "gross receipts" includes all receipts received during the respective policy periods, regardless of when the work was performed. (Pl.'s Mem. at 7). Cyncal, on the other hand, contends that "gross receipts" refers to receipts for work performed during the policy period, and excludes retainage payments for work performed prior to the policy period. (Def.'s Mem. at 4, 7). That dispute in turn, leads to the dispute about the amount of the additional premiums owed. (*See* Pl.'s 56.1 Stmt. ¶¶ 12–14; Def.'s 56.1 Stmt. ¶¶ 6–11).

8

With respect to the 2021 Policy, American Empire asserts that Cyncal's gross receipts for the policy period were $ 3,183,416, a number based on an audit conducted by Matson Driscoll & Damico LLP, a forensic accounting firm. (Pl.'s 56.1 Stmt. ¶¶ 11–12; 2021 Audit Report, attached as Ex. 3 to Myers Aff., Dkt. No. 111-5 at 2). Using that baseline, American Empire determined that Cyncal owed an additional premium of $ 143,641. (Pl.'s 56.1 Stmt. ¶ 14).

For the 2022 Policy, American Empire claims the audit revealed that Cyncal's gross receipts for the policy period were $ 3,297,478. (*Id.* ¶ 13; 2022 Audit Report, attached as Ex. 4 to Myers Aff., Dkt No. 111-6 at 2). Accordingly, American Empire determined that Cyncal owed an additional premium of $ 192,388. (Pl.'s 56.1 Stmt. ¶ 14). Cyncal has not paid these amounts, (*id.* ¶ 15; Def.'s 56.1 Stmt. ¶ 12), but disputes the accuracy of the audit figures, (Def.'s 56.1 Stmt. ¶¶ 10–11).

Cyncal "disputes [that] the Matson Driscoll & Damico LLP audits conducted were properly analyzed, allocated, or otherwise determined." (*Id.* ¶ 6). But Cyncal does not cite to any record evidence to support this assertion, nor does Cyncal offer any alternative calculation of the additional premiums. Cyncal also contends that the gross receipts figures used by American Empire to compute the additional policy premiums—$ 3,183,416 for the 2021 Policy and $ 3,297,478 for the 2022 Policy—are "incorrect" without citing to any evidence. (*Id.* ¶¶ 7–8).

Cyncal also alleges American Empire "increased the amount of the audit sales by adding in received retainage payments for prior years." (*Id.* ¶ 10). That assertion is as clear as mud, but it is of no moment. Like its other assertions, it is not supported by any

9

record evidence, and it is therefore worthless, and the Court must credit American Empire's audit results and calculations.  To be sure, Cyncal cites—without specific pincites to paragraphs—the Affidavit of Joseph Callahan, the President of Cyncal.  (*Id.*; Aff. of Joseph Callahan in Opp'n to Pl.'s Mot. for Partial Summ. J. dated Mar. 24, 2025 ("Callahan Aff."), Dkt. No. 111-15 ¶ 1).  But the Callahan Affidavit merely reiterates Cyncal's claims that American Empire's calculations are wrong without offering any evidence that supports Cyncal's interpretation of the policies.  For instance, Callahan states that "[t]he gross receipts calculated by American Empire are incorrect.  For the relevant periods, the gross receipts calculated by American Empire include at least $ 439,155 in retainage payments from prior policy years, which should have been excluded." (Callahan Aff. ¶ 7).  The Affidavit does not cite any policy provision, explanation, or evidence to support the exclusion of retainage payments from the calculation, and Cyncal does not cite any other evidence to support its claim that the retainage payments should be excluded from American Empire's calculation of Cyncal's gross receipts.  (*See id.*).

With the methodology and the amounts owed undisputed—by Cyncal's failure to rebut facts with admissible evidence—American Empire is entitled to summary judgment unless Cyncal can demonstrate a material dispute about the meaning of "gross receipts."  For the reasons explained below, it cannot.

10

## DISCUSSION

**I.    Breach of Contract**

American Empire seeks partial summary judgment against Cyncal on its first cause of action for breach of contract. (Pl.'s Mem. at 1). The elements of a breach of contract claim are "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) breach by the other party, and (4) damages suffered as a result of the breach." *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 F. App'x 274, 276 (2d Cir. 2018) (citing *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)).

Most of these elements are undisputed. The parties agree that the 2021 and 2022 Policies are contracts, and they require premiums to be calculated on "gross receipts." (*See* American Empire 2021 Policy at 10, 26, 33; American Empire 2022 Policy at 10, 26, 33). There is no dispute that American Empire provided insurance. And because Cyncal did not contest American Empire's methodology, there is no dispute that American Empire is entitled to embark on a two-step process for premium payment: first, using Cyncal's own estimates it calculates the Advance Premium, and second, it performs a reconciliation based on an audit.

Cyncal contends that there is no breach because American Empire misapprehends the term "gross receipts." The Court concludes term gross receipts in the policies is unambiguous and includes all revenues Cyncal received during the relevant policy period, even if those revenues were earned for work completed prior to the period.

11

"Under New York law, insurance policies are interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 98 (2d Cir. 2012). Accordingly, "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." *Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 321 (2017) (quoting *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 10 N.Y.3d 170, 177 (2008)); *see also Olin Corp.*, 704 F.3d at 99.

The policies do not contain a definition of the term "gross receipts." "[W]hen a contract term is undefined, a court should look to the plain meaning of the language to ascertain whether there is ambiguity." *Lee v. BSB Greenwich Mortg. Ltd. P'ship*, 267 F.3d 172, 178 (2d Cir. 2001). The plain and ordinary meaning of the term "gross" is an amount that is undiminished, not reflective of reduction, further calculation or adjustment: Black's Law Dictionary defines "gross" as "[u]ndiminished by deduction; entire." *Gross*, Black's Law Dictionary (11th ed. 2019). Merriam Webster similarly defines "gross" as "consisting of an overall total exclusive of deductions." *Gross*, Merriam-Webster, https://perma.cc/6JNA-KB98 (last visited Nov. 4, 2025). And therefore the term "gross receipts" means the total receipts (in this case revenues), i.e., before netting, deduction, adjustment, or reduction. This meaning is unambiguous.

Indeed, other courts have reached this same conclusion—the term "gross receipts" is unambiguous and includes all receipts received by a business, regardless of the source. As one state court explained:

> 'Gross receipts,' as used in an insurance policy in providing a method of determining the premium to be paid, is not on [sic] ambiguous term. The

12

>  words mean the whole, entire total receipts, as opposed to 'net receipts[,]' and under ordinary basis methods of handling accounts the term must be taken to include the whole total gross receipts without any deductions.

*Sheriff v. Moore*, 125 S.E.2d 729, 729–30 (Ga. Ct. App. 1962) (citation omitted). Other states are in accord. *E.g.*, *Commonwealth v. Koppers Co.*, 156 A.2d 328, 332 (Pa. 1959) ("[T]he term gross receipts, in the absence of any statutory definition of the term, must be taken to include the whole total gross receipts without any deductions."); *Laclede Gas Co. v. City of St. Louis*, 253 S.W.2d 832, 835 (Mo. 1953) ("The word 'gross' appearing in the term 'gross receipts,' as used in the ordinance, must have been and was there used as the direct antithesis of the word 'net.' In its usual and ordinary meaning 'gross receipts' of a business is the whole and entire amount of the receipts without deduction."); *Savage v. Commonwealth ex rel. State Corp. Comm'n*, 45 S.E.2d 313, 317 (Va. 1947) ("The words 'gross receipts' mean 'whole, entire, total receipts.'"); *see also Smith v. Hubert*, 31 N.Y.S. 1076, 1079–80 (1st Dep't 1895) ("Upon this last is placed appellant's contention that he was not liable for the rent, except in the event that there were profits . . . . In determining the question whether the word 'proceeds' is to be construed the same as 'net profits,' or as 'receipts' or 'gross receipts,' resort must be had to the contract itself . . . . If the rent was payable out of profits only, why were not apt words used? We think it was intended to use the word 'proceeds' out of which the rent was to be paid, as equivalent to 'receipts' or 'gross proceeds[.]'"); *cf. Lee*, 267 F.3d at 179 ("[T]he term 'gross sales proceeds of . . . Unsold Units' . . . is unambiguous . . . . [I]t is clear that

13

'gross sales proceeds' are just that—the receipts from the sale of the units, without any deductions.").[3]

And when parties choose to define "gross receipts" in a New York contract, the definitions they choose, unsurprisingly, mimic the plain meaning. *E.g.*, *Town of Islip v. Smith*, 3 A.D.2d 726, 726 (2d Dep't 1957) ("The term 'gross receipts' was not defined in the lease, but it was provided therein that the term 'gross income' should be construed as meaning, *inter alia*, '[t]otal income received by sub-lessees derived from all sources by reason of the operation of the sub-lessee.'").

Applying the plain meaning here, the record shows that American Empire properly calculated Cyncal's gross receipts under the 2021 and 2022 Policies—based on the amounts received during the policy period, regardless of when work was performed, and without any deductions. To compute the additional premium owed on the policies, American Empire used the gross receipts reflecting Cyncal's total receipts received during the policy period. (*See* 2021 Audit Report at 2–3; 2022 Audit Report at 2–3).

---

[3] *American Empire Surplus Lines Insurance Co. v. J.R. Contracting & Environmental Consulting, Inc.* reaches a different result as to the ambiguity of "gross receipts" in a similar insurance contract issued by American Empire. No. 23-CV-4942, 2025 WL 2606676, at *1 (S.D.N.Y. Sep. 9, 2025). That case is materially different from the present one. Significantly, there the parties' dispute centered on the exclusion of a variety of "work" from the policy. *Id.* at *1 ("As relevant here, the Policy does not cover a wide spectrum of asbestos-related work and claims."). And the dispute was less about the meaning of "gross receipts" but whether the parties had calculated premiums by taking proper account of the exclusions. *Id.* at *2 ("J.R. contends that, in computing J.R.'s actual gross receipts . . . [the insurer] did not subtract receipts from work excluded by the Policy."). Cyncal has no analogous argument here, and is trying to create one based on its novel interpretation of "gross receipts."

Cyncal contends that the plain meaning of "gross receipts" requires that the term be interpreted to include receipts only for work performed during the respective policy periods. (Def.'s Mem. at 7–8). In other words, it would subtract out receipts received during the period, if they were for work performed in other years. But by defining it that way, Cyncal is making the receipts something other than gross. It cites to no evidence to support this argument. Nor does it cite to a single case from any jurisdiction to support this interpretation of the policy. That Cyncal can come up with a different meaning does not create an ambiguity when the meaning is plain. *See Olin Corp.*, 704 F.3d at 99 ("Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation. An unambiguous provision of the contract should be given its plain and ordinary meaning and the contract should be construed without reference to extrinsic evidence." (quotations omitted)).

Because there is no genuine issue of material fact as to the meaning of "gross receipts" in the American Empire Policies or the accuracy of American Empire's premium calculations, American Empire is entitled to summary judgment on its breach of contract claim. And as noted, there is no material dispute about the amounts owed under American Empire's "gross receipts" calculation—despite Cyncal's conclusory and unexplained assertions to the contrary about retainage payments.

## II.     Additional Relief Sought

### a.  Interest

#### i.  Prejudgment Interest

American Empire seeks interest on the unpaid additional premiums pursuant to CPLR § 5001. (Pl.'s Mem. at 17–18). Under New York Law, parties are entitled to recover prejudgment interest "upon a sum awarded because of a breach of performance of a contract." C.P.L.R. § 5001(a); *Adams v. Lindblad Travel, Inc.,* 730 F.2d 89, 93 (2d Cir. 1984) ("Under the law of New York, therefore, prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract." (citing *Julien J. Studley, Inc. v. Gulf Oil Corp.,* 425 F.2d 947, 950 (2d Cir. 1969))); *Gov't Emps. Ins. Co. v. Onyema*, 790 F. Supp. 3d 147, 168 (E.D.N.Y. 2025) ("Under New York law, if a plaintiff prevails on a claim for breach of contract, that plaintiff is also entitled to pre-judgment interest." (quoting *BASF Corp. v. Gabriel's Collision Norman Ave., Inc.*, No. 21-CV-1908, 2022 WL 1407244, at *3 (E.D.N.Y. Jan. 12, 2022))). Prejudgment "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed," C.P.L.R. § 5001(b), and "shall be at the rate of nine per centum per annum," *id.* § 5004(a).

Here, American Empire is entitled to prejudgment interest dating from September 27, 2022 on the 2021 Policy and September 17, 2023 on the 2022 Policy. (*See* Email Correspondence, attached as Ex. A to Callahan Aff., Dkt. No 111-16 at 3).[4]

---

[4] Because the parties did not provide evidence indicating the due date for the additional premium owed on the 2022 Policy, the Court determined that due date based on the due date for the 2021 Policy, which was 26 days from the date the audit was completed.

16

American Empire's claim against Cyncal accrued on the date of Cyncal's breach. Cyncal breached its contract with American Empire on the date that payment was due, not the date that American Empire sent a demand for payment. *See Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007) ("A cause of action for breach of contract ordinarily accrues and the limitations period begins to run upon breach." (citing *Ely–Cruikshank Co. v. Bank of Montreal,* 81 N.Y.2d 399, 402 (1993))).

Therefore, the Court awards American Empire prejudgment interest on the unpaid premium of $ 143,641 for the 2021 Policy at a rate of 9% per annum beginning on September 27, 2022, and interest on the unpaid premium of $ 192,388 for the 2022 Policy at the same rate beginning on September 17, 2023.

### ii. Post-judgment interest

American Empire is also entitled to post-judgment interest under 28 U.S.C. § 1961. *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) ("[W]e have consistently held that an award of postjudgment interest is mandatory[.]" (citing *Westinghouse Credit Corp. v. D'Urso,* 371 F.3d 96, 100 (2d Cir. 2004))). Accordingly, the Court awards American Empire post-judgment interest to be calculated from the date the Court enters judgment until the date of payment at the rate set forth in 28 U.S.C. § 1961.

### b. Attorney's Fees

American Empire also seeks attorney's fees. (Pl.'s Mem. at 18–19). As

American Empire recognizes, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser[.]" *Lackey v. Stinnie,* 604 U.S. 192, 199 (2025) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)).  While there is a limited exception that permits the prevailing party to recover attorney's fees when the losing party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons," that exception is inapplicable here.  *See Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir. 1986) ("To ensure, however, that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes[.]" (quotations omitted)).  American Empire argues that Cyncal acted in bad faith by continuing in litigation when "Cyncal had no defense," and that Cyncal's "repeated disregard for discovery orders" provides evidence of bad faith.  (Pl.'s Mem. at 19).

The fact that Cyncal's defense was ultimately unsuccessful does not provide sufficient evidence that Cyncal asserted the defense in bad faith.  *See, e.g., Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999) ("[J]udgment as a matter of law against a claim is a necessary, but not a sufficient, condition for a finding of a total lack of a colorable basis."); *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985) ("The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice."); *e.g., Bloomfield Inv. Res. Corp. v. Daniloff*, No. 17-CV-4181, 2024 WL 706965, at *3–*4 (S.D.N.Y. Feb. 21, 2024) (declining to award attorney's fees where the

Court found defendant's claims meritless but plaintiff failed to provide sufficient evidence of improper motive).  American Empire has not put forth sufficient evidence that Cyncal acted with an improper purpose or that its argument lacked a colorable basis—indeed, American Empire itself could not cite any binding authority for its interpretation of the term "gross receipts," other than an inapposite citation to IRS regulations.  This Court relies on the plain meaning of the term, buttressed by persuasive conclusions from other courts, to grant summary judgment, but Cyncal's interpretation—in a contract that lacked defined terms—was hardly beyond peradventure.  As such, American Empire is not entitled to attorney's fees.

## CONCLUSION

For the reasons explained above, American Empire's motion for partial summary judgment is granted.  American Empire is entitled to $ 336,029 in damages on its breach of contract claim, as well as interest to be calculated by the Clerk of Court consistent with this opinion. American Empire is directed to file a letter of no more than 700 words explaining whether the other claims it has asserted in the Complaint can be dismissed in light of this opinion and indicating how it intends to proceed with respect to the defaulting Defendants.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  November 7, 2025
       Central Islip, New York